UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
## 25-CR-80093-ROSENBERG/REINHART
CASE NO. _____

18 U.S.C. § 1343
18 U.S.C. § 495
18 U.S.C. § 1957(a)
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 492
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

JASEN BUTLER,

     Defendant.

_____/

FILED BY_____ BM _____D.C.

Jun 11, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.    The SEA Card® Program was an order, communications, and invoice system designed to enable United States Department of Defense (DOD) vessels and other federal ships to purchase fuel from suppliers at seaports worldwide.

2.    For certain ports, ships placed fuel orders on the SEA Card Open Market, meaning that multiple pre-approved vendors in SEA Card had an opportunity to bid on and compete for the order. Typically, the Defense Logistics Agency Energy (DLA-E) awarded the contract to the lowest priced, technically acceptable (LPTA) offeror. DLA-E was responsible for paying the

1

vendor for the fuel and was reimbursed by the DOD component or federal civilian agency at a set rate. DLA-E was in charge of selecting the vendor to supply fuel on behalf of most of the military and civilian governmental entities (although some entities, such as the U.S. Coast Guard, made their own purchasing decisions).

3.      It was common for the itinerary of a United States military vessel to change. Consequently, fuel orders were often changed or cancelled after a vessel placed an order. When a fuel order was cancelled or changed, the DOD component or other agency operating the vessel reimbursed the vendor for any costs the vendor incurred as a result of the cancellation or change. These costs, when passed on to the government, were collectively termed "ancillary fees." Ancillary fees included demurrage (the cost of waiting to supply the vessel with fuel), backhaul (the cost of the loading barge returning with the undelivered fuel), and other cancellation fees. The vendor used SEA Card to request reimbursement for ancillary fees and upload supporting documentation. When invoices supporting ancillary fees were transmitted, they were reviewed by the contracting officer at DLA-E, by the supply officer on the vessel, and often by others in the supply officer's command structure. The supply officer could dispute the charge if it appeared to be unwarranted or if the documentation appeared inadequate.

### The Defendant and Relevant Entities and Individuals

4.      Defendant **JASEN BUTLER** was a resident of Palm Beach County and the principal of Independent Marine Oil Services, LLC (IMOS).

5.      IMOS was a Florida business with an official address at **JASEN BUTLER**'s Palm Beach County residence. IMOS was in the business of bidding on fuel contracts for government vessels through the online SEA Card Open Market.

6.      Company 1 was a global fuel broker with headquarters in Singapore.   IMOS contracted with Company 1, which in turn contracted with local fuel suppliers to purchase fuel.

7.      Company 2 was a business with an official address in Palm Beach County, Florida. Company 2 provided disaster cleanup services.

8.      Individual 1 was a resident of Palm Beach County and the owner of Company 2.

9.      Individual 2 was a resident of Palm Beach County and an independent contractor working with Company 2.

10.     U.S. Naval Officer 1, a Lieutenant Commander for U.S. Naval Forces Europe, worked in procurement.

11.     U.S. Naval Officer 2, a Navy Lieutenant, was the Supply Officer on the USS Thomas Hudner.

## COUNTS 1-27
Wire Fraud
(18 U.S.C. § 1343)

1.      The General Allegations section is re-alleged and incorporated by reference as though fully set forth herein.

2.      From as early as August 2022, and continuing through January 2024, the exact dates being unknown to the Grand Jury, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**JASEN BUTLER**,

did knowingly, and with the intent to defraud, devise and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and

3

promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendant, **JASEN BUTLER**, to unlawfully enrich himself by (a) altering invoices, receipts, records of wire transfers, and other documents to reflect expenses that he did not actually incur in his fuel business; (b) submitting these false and fraudulent documents to DLA-E and others for reimbursement via interstate wire; (c) falsely asserting by email and other communications to DLA-E and others that in order to supply the Government with fuel he had sent money overseas and otherwise paid fees that he had, in truth and in fact, not paid; (d) concealing his identity from government representatives by adopting the false identity "Adam Ogden" and feigning employment by a fictitious fuel division of Individual 1's company; and (e) using the proceeds of the fraud for his personal use and benefit.

## THE SCHEME AND ARTIFICE

The manner and means by which the defendant, **JASEN BUTLER**, sought to accomplish the object and purpose of the scheme and artifice included, among others, the following:

4.      From as early as 2022, **JASEN BUTLER**, on behalf of IMOS, bid on fuel contracts through SEA Card, in many cases falsely stating that if the Government accepted his bid then cancelled the order or made changes, **BUTLER**'s business would incur large fees.

4

5.      When a vessel cancelled an order, **JASEN BUTLER** altered and fabricated invoices and other records of expenses to falsely represent that IMOS had incurred expenses that IMOS had not, in fact, incurred.

6.      In July 2023, **JASEN BUTLER** charged the Government a $557,265 cancellation fee for a cancelled fuel delivery to the USS Thomas Hudner in Split, Croatia. **BUTLER** was awarded that contract on or about July 10, 2023. That same day—two hours after the contract award—the USS Hudner cancelled the order. U.S. Naval Officer 1 was skeptical that the full cost of the order would be unrecoverable so soon after the order was placed. He examined the documentation **BUTLER** provided and noticed a number of discrepancies suggesting the documentation had been forged. U.S. Naval Officer 1 therefore instructed U.S. Naval Officer 2, the Supply Officer on the USS Thomas Hudner, to dispute the order. U.S. Naval Officer 2 did so.

7.      On or about July 20, 2023, **JASEN BUTLER** wrote to DLA-E: "I'm [sic] know i'm under a bit of scrutiny recently for the ancillary charges. I will provide whatever proof NAVY needs please just let me know. At the end of the day I just need to get paid back for everything. It's a large amount of money (As you know) that I have already sent out. I can't float this forever." In truth and in fact, **BUTLER** had not "sent out" the claimed $557,265. Company 1 had only charged him a $3,000 cancellation fee for this order.

8.      On or about September 12, 2023, **JASEN BUTLER** spoke with officials at DLA-E who denied the claimed $557,265 in charges on the grounds of inadequate documentation. **BUTLER** agreed to withdraw the charge.

9.      Beginning in September 2023, defendant **JASEN BUTLER** began to use an alias to hide his true identity and involvement from the United States. Specifically, **BUTLER** arranged

5

for Individual 1—the owner of Company 2, a business in Palm Beach County, Florida—to provide him with a Company 2 email account not tied to his name. **BUTLER** set the name on the email account to "Adam Ogden," which allowed him to secretly bid for the contracts, ostensibly on behalf of Company 2. In fact, **BUTLER** continued to contract with his regular supplier, Company 1, on behalf of IMOS, and make the arrangements for the government vessels to receive the fuel. Company 2 received the government payments and forwarded the money to **BUTLER**.

10.     On or about October 26, 2023, the USS Thomas Hudner issued a Request For Quote (RFQ) through SEA Card, placing a fuel order for delivery on October 31, 2023 in Jeddah, Saudi Arabia. **JASEN BUTLER** bid using Company 2's SEA Card account. **BUTLER** wrote in the bid comments: "My accounting department has told me to be very clear about the order. The supplier has said numerous times that in order to lock in the fuel price and date confirmed we must send the funds today (IF we win). They have also stated that they do not return money for any reason." **BUTLER** knew at the time that Company 1 was not requesting payment in advance of delivery.

11.     The bid placed by **JASEN BUTLER** was accepted and the fuel contract was awarded to Company 2. On or about October 27, 2023, the USS Hudner cancelled the order.

12.     On or about October 30, 2023, **JASEN BUTLER**, using the alias Adam Ogden, charged the Government a cancellation fee of $876,818.75. In support of the cancellation, he uploaded false and fraudulent documents via SEA Card and emailed them to DLA-E. These documents included: (1) a fabricated order confirmation purportedly from a fuel company in Saudi Arabia charging a total of $856,237.50, CIA (cash-in-advance), and (2) an altered wire-transfer document, purportedly showing that he had paid that amount to the Saudi Arabian fuel company

on October 18, 2023. **BUTLER**, in truth and fact, had not placed this order with the fuel company shown on the invoice on this order—he had placed the order with his usual broker, Company 1.

13.    On or about October 30, 2023, an employee of DLA-E wrote to "Ogden" asking him to do what he could to minimize the cancellation fee. **JASEN BUTLER** responded as Ogden by email: "Please understand that I'm able to fight with suppliers when they don't already have our money. Once they have it I can argue till the cows come home but at the end of the day they don't have to send it back. As you can see from the confirmation we agreed that they would not have to send it back. I wish I could compel the Saudis to return it. That being said - We did refuse to send them anything else. They initially wanted $150k for the cancellation since they claimed they turned away other business and lost said business because the Navy boat cancelled. Like I can't make them send it back, they can't make us send more. The system does not allow us to put in a column of how much we saved them or I would have." These statements were false.  In truth and in fact, **BUTLER** had not provided any funds to the fuel company in Saudi Arabia.

14.    Although the charge was initially disputed, **JASEN BUTLER**, posing as Ogden, continued to demand payment. On or about December 19, 2023, the Government approved the charge for reimbursement. Company 2 received the money on or about January 19, 2024.

15.    Between August 2022 and January 2024, **JASEN BUTLER** submitted to DLA-E via email and SEA Card at least 27 false documents purporting to substantiate ancillary fees on at least 25 SEA Card orders, as described below. These invoices inflated **BUTLER**'s true expenses by more than $5 million.

## USE OF WIRES

16.     On or about the dates specified below, in the Southern District of Florida, and elsewhere, the defendant,

**JASEN BUTLER**,

for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communications certain writings, signs, signals, pictures and sounds, as described below:

| Count | Approximate Date of Wire | Invoice Amount | Ordering Vessel | Description of Wire Transmission |
|-------|-------------------------|----------------|-----------------|----------------------------------|
| 1 | 8/12/2022 | $7,362.01 | USNS Carson City | altered invoice for backhaul fee transmitted via interstate wire through SEA Card upload |
| 2 | 8/18/2022 | $57,000.00 | USCGC Douglas Denman | altered invoice for cancellation fee transmitted via interstate wire through SEA Card upload |
| 3 | 8/23/2022 | $203,662.00 | USNS Trenton | altered invoice for cancellation fee transmitted via interstate wire though SEA Card upload |
| 4 | 8/23/2022 | $4,823.48 | USNS Bruce Heezen | altered invoice for backhaul fee transmitted via interstate wire through SEA Card upload |
| 5 | 8/26/2022 | $48,608.00 | USS Dextrous | altered invoice for cancellation fee transmitted via interstate wire through SEA Card upload |
| 6 | 8/26/2022 | $22,725.00 | USS Devastator | altered invoice for cancellation fee transmitted via interstate wire through SEA Card upload |
| 7 | 9/20/2022 | $165,500.00 | USS Mesa Verde | altered invoice for backhaul fee transmitted via interstate wire through SEA Card upload |

8

| Count | Approximate Date of Wire | Invoice Amount | Ordering Vessel | Description of Wire Transmission |
|---|---|---|---|---|
| 8 | 9/20/2022 | $341,049.60 | USS Mesa Verde | altered invoice for backhaul fee transmitted via interstate wire through SEA Card upload |
| 9 | 9/20/2022 | $27,500.00 | USS Mesa Verde | altered invoice for overtime fee transmitted via interstate wire through SEA Card upload |
| 10 | 9/26/2022 | $40,250.00 | USNS Puerto Rico | altered invoice for overtime fee transmitted via interstate wire through SEA Card upload |
| 11 | 12/6/2022 | $33,623.00 | USS Forrest Sherman | altered invoice for backhaul fee transmitted via interstate wire through SEA Card upload |
| 12 | 12/15/2022 | $1,445,441.68 | USS Hershel Williams | altered invoice for backhaul fee transmitted via interstate wire through SEA Card upload |
| 13 | 2/17/2023 | $108,035.67 | USCGC Stone | altered invoice for backhaul fee transmitted via interstate wire through SEA Card upload |
| 14 | 2/17/2023 | $101,537.27 | USS Arleigh Burke | altered invoice for backhaul and quantity change fee transmitted via interstate wire through SEA Card upload |
| 15 | 3/1/2023 | $54,128.00 | USS Patriot | altered invoice for cancellation fee transmitted via interstate wire through SEA Card upload |
| 16 | 3/1/2023 | $31,870.00 | USS Patriot | altered invoice for cancellation fee transmitted via interstate wire through SEA Card upload |
| 17 | 3/23/2023 | $130,117.90 | USS Truxton | altered invoice for backhaul fee transmitted via interstate wire through SEA Card upload |
| 18 | 3/28/2023 | $69,009.49 | SS Gopher State | altered invoice for backhaul fees transmitted via interstate wire through SEA Card upload |
| 19 | 5/7/2023 | $81,840.00 | SS Keystone State | altered invoice for backhaul and overtime fees transmitted via interstate wire through SEA Card upload |
| 20 | 6/10/2023 | $224,757.80 | USS Oakland | altered invoice for ancillary fees transmitted via interstate wire through SEA Card upload |

| Count | Approximate Date of Wire | Invoice Amount | Ordering Vessel | Description of Wire Transmission |
|-------|--------------------------|----------------|-----------------|----------------------------------|
| 21 | 7/26/2023 | $557,265.00 | USS Thomas Hudner | altered invoice for cancellation and backhaul fees transmitted via interstate wire through SEA Card upload |
| 22 | 7/26/2023 | $223,509.25 | USS Antietam | altered invoice for cancellation and backhaul fees transmitted via interstate wire through SEA Card upload |
| 23 | 7/28/2023 | $726,641.56 | USS Paul Hamilton | altered invoice for cancellation fee transmitted via interstate wire through SEA Card upload |
| 24 | 8/09/2023 | $283,950.00 | USNS Trenton | altered invoice for ancillary fees transmitted via interstate wire through SEA Card upload |
| 25 | 8/29/2023 | $343,528.91 | USS Paul Ignatius | altered invoice for ancillary fees transmitted via interstate wire through SEA Card upload |
| 26 | 10/30/2023 | $856,237.50 | USS Thomas Hudner | altered order confirmation requiring payment in advance transmitted via interstate wire through SEA Card upload |
| 27 | 1/17/2024 | $831,749.63 | MV Sagamore | altered invoice for fuel submitted to DLA transmitted via interstate wire by email |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 28-33
Forgery
(18 U.S.C. § 495)

1.      The General Allegations section is re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates specified below, in Palm Beach County in the Southern District of Florida, and elsewhere, the defendant,

**JASEN BUTLER,**

10

falsely made, altered, forged, and counterfeited an order, certificate, receipt, contract, and other writing, for the purpose of obtaining and receiving, and of enabling any other person, directly or indirectly, to obtain and receive from the United States and any officers and agents thereof any sum of money, with each forgery below constituting a separate and distinct count of this Indictment:

| Count | Approximate Date of Forgery | Forged Writing | Approximate Sum of Money Sought |
|-------|-----------------------------|----------------|----------------------------------|
| 28 | 12/15/2022 | Invoice for backhaul fee related to a fuel order for the USS Hershel Williams | $1,445,441 |
| 29 | 2/17/2023 | Invoice for ancillary fees related to a fuel order for the USS Arleigh Burke | $101,537 |
| 30 | 7/17/2023 | Invoice for cancellation fees related to a fuel order for the USS Thomas Hudner | $557,265 |
| 31 | 7/28/2023 | Invoice for cancellation fee related to a fuel order for the USS Paul Hamilton | $726,641 |
| 32 | 10/30/2023 | Wire transfer receipt | $856,237 |
| 33 | 1/17/2024 | Invoice for fuel delivery to the MV Sagamore | $831,749 |

In violation of Title 18, United States Code, Sections 495 and 2.

### COUNTS 34-35
Money Laundering
(18 U.S.C. § 1957(a))

1.    The General Allegations section is re-alleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates specified below, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**JASEN BUTLER**,

did knowingly engage and attempt to engage in a monetary transaction by, through, and to a

11

financial institution affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, and knowing that the property involved in the monetary transaction was derived from some form of unlawful activity, as set forth below:

| Count | Approximate Date | Approximate Amount | Description of Monetary Transaction |
|-------|------------------|--------------------|--------------------------------------|
| 34 | 10/27/2023 | $1,169,545 | Wire transfer from a PNC Bank Account ending in 7061 to a Bank Account associated with Title Company 1 for the purchase of real property located at 5051 SW Markel Street, Palm City, Florida 34990 |
| 35 | 1/31/2024 | $2,040,719 | Wire transfer from a PNC Bank Account ending in 7061 to a Bank Account associated with Title Company 2 for the purchase of real property located at 190 County Road 173, Westcliffe, Colorado 81252 |

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1957(a).

## FORFEITURE ALLEGATIONS

1.     The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **JASEN BUTLER**, has an interest.

2.     Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant, **JASEN BUTLER**, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.      Upon conviction of a violation of Title 18, United States Code, Section 495, as alleged in this Indictment, the defendant, **JASEN BUTLER**, shall forfeit to the United States any counterfeits of any coins or obligations or other securities of the United States or of any foreign government, or any articles, devices, and other things made, possessed, or used in violation of this chapter or any material or apparatus used or fitted or intended to be used, in the making of such counterfeits, articles, devices or things, found in the possession of any person without authority from the Secretary of the Treasury or other proper officer, pursuant to Title 18, United States Code, Section 492.

4.      Upon a conviction of a violation of Title 18, United States Code, Section 1957(a), as alleged in this Indictment, the defendant, **JASEN BUTLER**, shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

5.      The property directly subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following:

a.  Real property located at 190 County Road 173, Westcliffe Colorado 81252;

b.  Real property located at 5051 SW Markel Street, Palm City Florida 34990;

c.  A forfeiture money judgment representing the value of any property which constitutes or is derived from proceeds traceable to the defendant's commission of the offenses.

6.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title

21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States

Code, Section 982(a)(1), Title 18, United States Code, Section 492, and the procedures set forth

in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code,

Section 982(b)(1), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

JONATHAN POMERANZ
VIJAY RAO
TRIAL ATTORNEYS
ANTITRUST DIVISION

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.: <u>25-CR-80093-ROSENBERG/REINHART</u>** |
| v. | |
| JASEN BUTLER, | **CERTIFICATE OF TRIAL ATTORNEY** |

_____/
Defendant.

**Court Division** (select one)

☐ Miami    ☐ Key West    ☐ FTP
☐ FTL      ☑ WPB

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

I do hereby certify that:

1.  I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) <u>No</u>
    List language and/or dialect: _____

4.  This case will take <u>6</u> days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)           (Check only one)

    I    ☐ 0 to 5 days        ☐ Petty
    II   ☑ 6 to 10 days      ☐ Minor
    III ☐ 11 to 20 days     ☐ Misdemeanor
    IV ☐ 21 to 60 days     ☑ Felony
    V   ☐ 61 days and over

6.  Has this case been previously filed in this District Court? (Yes or No) <u>No</u>
    If yes, Judge _____ Case No. _____

7.  Has a complaint been filed in this matter? (Yes or No) <u>No</u>
    If yes, Judge _____ Magistrate Case No. _____

8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) <u>No</u>
    If yes, Judge _____ Case No. _____

9.  Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) <u>No</u>

13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) <u>No</u>

14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? <u>No</u>

15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? <u>No</u>

16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? <u>No</u>

By: _AUSA_____
JONATHAN POMERANZ
DOJ Trial Attorney
SDFL Court ID No. A5503242

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: _____ **JASEN BUTLER** _____

**Case No**: _____

Counts #:   1 – 27

  Title 18, United States Code, Section 1343 _____

  Wire Fraud _____
* **Max. Term of Imprisonment:   20 years as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:  3 years**
* **Max. Fine:   $250,000 or twice the gross gain or loss from the offense**

Counts #:   28 – 33

  Title 18, United States Code, Section 495 _____

  Forgery _____
* **Max. Term of Imprisonment:   10 years as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:   $250,000 or twice the gross gain or loss from the offense**

Counts #:   34 – 35

  Title 18, United States Code, Section 1957(a) _____

  Money Laundering _____
* **Max. Term of Imprisonment:   10 years as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable):    N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:   $500,000 or twice the value of the property involved in the transaction**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**