UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  25-80093-CR MIDDLEBROOKS

UNITED STATES OF AMERICA

v.

JASEN BUTLER

Defendant.

_____/

**JASEN BUTLER'S RESPONSE IN OPOSITION TO
UNITED STATES' MOTION FOR PRELIMINARY ORDER OF FORFEITURE**

Jasen Butler ("Butler") through undersigned counsel submits his Response in Opposition to the United States' Motion for Preliminary Order of Forfeiture ("Motion"). Butler further requests an evidentiary hearing pursuant to Fed.R.Crim.P 32.2.

**INTRODUCTION**

Butler was charged in a 35-count Indictment with three categories of offenses. Counts 1-27 alleged individual counts of wire fraud in violation of 18 U.S.C §1343 and Counts 28-33 alleged individual counts of forgery in violation of 18 U.S.C. §495. Counts 34 and 35 alleged money laundering in violation of 18 U.S.C. §1957(a).

The description of the monetary transaction for Count 34 specified a wire transfer for the purchase of real property located at 5051 Markel Street, Palm City, Florida 34990 ("Florida property"). The description of the monetary transaction for Count 35 specified a wire transfer for the purchase of real property located at 190 County Road 173, Westcliffe, Colorado 81252 ("Colorado property). (D.E. 1 at 12).

The Indictment, in paragraph 5 of the forfeiture allegations, alleged that the property subject to forfeiture included, but was not limited to:

      i. Real property located at 190 County Road 173. Westcliffe, Colorado 81252;

     ii. Real Property located at 5051 SW Markel Street, Palm City, Florida 34990; and

    iii. A forfeiture money judgment representing the value of any property which constitutes or is derived from the proceeds traceable to the defendant's commission of the offenses (D.E. 1 at 13).

On January 15, 2026, the jury returned its verdict finding Butler guilty on Counts 1-33 and Count 35.  Butler was found not guilty of Count 34.

The Government filed its Motion for Preliminary Order of Forfeiture on March 26, 2026 (D.E. 145) with a response due April 9, 2026. Butler objects to the Motion and his response follows.

The Government seeks to forfeit the Colorado property as involved in the money laundering conviction in Count 35 and as proceeds of the wire fraud convictions in Counts 25 and 26; the Florida property as proceeds of the wire fraud conviction in Count 23; and the entry of a forfeiture money judgment in the amount of $4,528,827.71 (D.E. 145 at 1 and 8).

The Government further seeks to forfeit the Colorado and Florida real properties towards satisfaction of a forfeiture money judgment.

This case does not present a dispute over whether Mr. Butler made false statements – he has acknowledged that he did. The dispute is whether those statements caused the Government to pay money it did not otherwise owe. Forfeiture turns on that question. The Government's motion assumes the answer without proving it.

## ARGUMENT

**A. The Government's forfeiture theory improperly assumes that any payment above Integr8's invoice automatically constitutes "proceeds of fraud," ignoring contractual entitlement and the required causal nexus.**

In its Motion, the Government states, "*By convicting the Defendant of 27 counts of wire fraud, the jury agreed that the Defendant sent false invoices to the military. The Government's*

*evidence at trial compared the false invoices to the real invoices from the Defendant's fuel supplier (Integr8), reviewed the amount that the United States military paid on each wire, the amount of the Integr8 invoices, the difference between the amount paid and the actual invoices, and the year paid* (citations omitted). ***Between August 2022 and January 2024, the military paid the Defendant at least $4,528.827.71 on falsified invoices in excess of the true invoices, which is the Defendant's proceeds from wire fraud*** (citations omitted)." (D.E. 145 at 8-9) (emphasis added)

The Government's proposed loss and forfeiture calculation rests on a legally flawed premise; that any difference between what the Government paid, and the amount reflected in Integr8 invoices automatically constitutes "proceeds of fraud." That assumption is incorrect as a matter of law and unsupported by the record. It ignores the governing contracts, collapses distinct legal concepts, and relieves the Government of its burden to prove that the funds at issue were obtained by means of a material misrepresentation at the time of contract formation.

The Government does not attempt to make that showing. Instead, it substitutes a mechanical calculation – subtracting Integr8's invoice from the Government's payment – and labels the difference "proceeds." That approach assumes, without sufficient proof, that the Government was only obligated to pay the supplier's cost. The contracts say otherwise.

The record reflects that the parties entered into firm-fixed-price contracts that included not only fuel costs, but also ancillary services, risk allocation, and pricing terms agreed upon at the time of contracting. The Government had the opportunity to evaluate competing bids and select the best value before awarding the contracts. Once those contracts were formed, the Government's payment obligation flowed from the agreed-upon pricing – not from the supplier's underlying invoice.

Even assuming that some portion of the payments exceeded what the Government was contractually obligated to pay, forfeiture would still be limited to that incremental amount and not the gross payment amounts or property derived from commingled funds. The Government's motion makes no effort to isolate any such incremental overpayment with the specificity required for criminal forfeiture.

### B.  The Government impermissibly shifts the burden of proof.

Criminal forfeiture is not a presumption-based remedy. The Government must prove, by a preponderance of the evidence, both the existence and the amount of forfeitable proceeds. It cannot satisfy that burden by redefining contractual payments as fraud proceeds and requiring the defense to disprove that characterization.

The Government's presentation effectively shifts the burden to the defense to disprove its loss calculation. By defining "proceeds" as the difference between payment and cost, the Government presumes that all such amounts are fraudulent unless the defense proves otherwise.

That is not the law. The burden remains on the Government to establish, by a preponderance of the evidence, the amount of property subject to forfeiture. That includes proving that the amounts it seeks were not otherwise contractually owed. The Government cannot meet its burden through assumption.

Accordingly, even accepting that Mr. Butler altered invoices, the Government must still prove that the amounts it paid were not otherwise owed under the governing contracts. It has not done so. Without that causal showing, the Government cannot establish that the challenged funds were obtained "by means of" fraud. Because the Government has failed to carry that burden, its proposed loss amount and corresponding forfeiture judgment must be rejected and/or substantially reduced.

4

### C. Tracing methodology cannot substitute for proof that the funds are forfeitable.

The Government relies heavily on financial tracing. Specifically, it relies on a last-in, first-out ("LIFO") methodology to connect funds to the purchase of real property. Tracing answers the question of where the money went, not whether the money is forfeitable in the first place. Without first establishing that the funds constitute proceeds of fraud, tracing is legally irrelevant.

If the underlying funds were contractually owed, they are not "proceeds" of fraud and are not subject to forfeiture—regardless of how they were traced through bank accounts or into specific assets. Accordingly, the Government cannot rely on tracing methodology to cure its failure to prove that the funds themselves were obtained "by means of" fraud.

### D. Proposed forfeiture of real property and money judgment violates the 8th Amendment Excessive Fines Clause as it is grossly disproportionate.

The Government's request to forfeit the Florida and Colorado real properties triggers constitutional scrutiny under the Excessive Fines Clause because criminal forfeiture is punitive in nature. The controlling principle is proportionality: "The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *See United States v. Bajakajian,* 524 U.S. 321, 334 (1998). A forfeiture violates the Constitution if it is "grossly disproportional to the gravity of a defendant's offense." *Id*.

Here, the Government seeks a forfeiture money judgment of $4.5 million, <u>plus</u> forfeiture of two real properties worth several million dollars combined. Where, as here, the Government received the benefit of its bargain – fuel delivered under fixed-price contracts – and the offense conduct concerns pricing and documentation rather than nonperformance, the proposed forfeiture constitutes a punishment that is grossly disproportionate to the offense and therefore unconstitutional.

**E. The Government fails to meet statutory requirements for substitute forfeiture.**

The Government alternatively seeks forfeiture of the Florida and Colorado properties as substitute assets to satisfy a forfeiture money judgment. That request fails because the Government has not met the strict statutory prerequisites of 21 U.S.C. § 853(p).

Substitute asset forfeiture is not automatic. It is a limited, statutory remedy that allows the Government to forfeit otherwise untainted property only after it establishes that directly forfeitable property is unavailable for specific, statutorily defined reasons.

Under § 853(p), the Government must prove that, *as a result of the defendant's acts or omissions*, directly forfeitable property:

A.  cannot be located upon the exercise of due diligence;

B.  has been transferred, sold, or deposited with a third party;

C.  has been placed beyond the jurisdiction of the Court;

D.  has been substantially diminished in value; or

E.  has been commingled such that it cannot be divided without difficulty.

This is a causation requirement. It is not enough to show that assets are unavailable; the Government must show that their unavailability is traceable to the defendant's conduct. Here, the Government's entire substitute asset showing rests on a brief declaration (D.E. 145-4) asserting, in boilerplate fashion, that directly forfeitable assets cannot be located, have been transferred, or have been commingled. That showing is insufficient. The declaration:

- does not identify any specific asset that is missing;

- does not describe any transfer, dissipation, or concealment;

- does not tie any alleged unavailability to a particular act or omission by Mr. Butler; and

- does not demonstrate the exercise of due diligence in attempting to locate such assets.

6

Instead, it merely recites the statutory language in generalized terms.

Boilerplate recitations of statutory language are not evidence. Without a specific, fact-supported showing tied to Mr. Butler's conduct, substitute asset forfeiture is legally unavailable.

<b><u>PROPERTY SOUGHT FOR FORFEITURE</u></b>

**<u>Real property located at 5051 SW Market Street, Palm City, Florida 34990</u>**

Jasen Butler was acquitted of the money laundering count that corresponded to his purchase of the Palm City, Florida property. Thus, the Government seeks forfeiture of the Florida property only as "proceeds of wire fraud" under 18 U.S.C. §981(a)(1)(C). The "proceeds" of Count 23 are alleged to be traced to the purchase of this property.

The "proceeds" alleged by the Government that Butler derived from Count 23 are $677,174.02. The PSR estimates the Florida property's value to be $1,295,000.00[1] (D.E. 141 at 32), double the alleged proceeds.

For Count 23, the Government agreed at contract formation to pay the full value of the fuel order in the event of cancellation ($691,866.00) in addition to a fixed-price cancellation fee ($50,000.00) for a total of $741,866. Butler invoiced the Government $726,641.26, and the Government paid him a total of $725,174.02 ($16,691.98 less than he was contractually owed).

The Government suffered no financial loss, and Butler did not receive any "proceeds" he was not contractually entitled to.

**<u>Real property located at 190 County Road 173, Westcliffe, Colorado 81252</u>**

The jury found Butler guilty of money laundering in Count 35 in violation of U.S.C. §1957(a). The "proceeds" of Counts 25 and 26 are alleged to be traced to the purchase of this property.

---

[1] Zillow estimate for the property is $1,570,800.00 as of the date of filing.

The "proceeds" alleged by the Government that Butler derived from Counts 25 and 26 are $206,088.94 for Count 25 and $737,089.84 for Count 26 – totaling $943,178.78. The PSR estimates the Colorado property's value to be $1,998,800.00 (D.E. 141 at 32), more than double the alleged proceeds.

For Count 25, the Government agreed at contract formation to pay a fixed-price fee for backhaul ($1,989.20/metric ton). It is unrebutted that the USS Paul Ignatius only accepted 407.88 of the 634.31 metric tons ordered. Butler reduced the backhaul total to 142.12 metric tons and invoiced the Government $275,773.91 for backhaul and $67,755.00 for additional fees charged by his supplier – for a total of $343,528.91. Butler invoiced the Government $ $343,528.91, but the Government paid him a total of $344,064.94.

For Count 26, the Government agreed at contract formation to pay a fixed-price cancellation fee ($1,336/metric ton) for a total of $901,800. Butler invoiced the Government only $856,237.50, but the Government paid him a total of $857,089.94.

The Government suffered no financial loss from these transactions, and Butler did not receive any "proceeds" he was not contractually entitled to. The record evidence establishes that Butler did not spend more than $10,000.00 in "criminally derived property" to purchase this property. A conviction under 18 U.S.C. §1957 requires that the transaction involve more than $10,000 in criminally derived property. The record does not establish that threshold once fixed-price obligations amounts are excluded. Without that showing, the statutory predicate for forfeiture of the Colorado property is not satisfied.

### Money judgment in the amount of $4,528,827.71

Butler contests the Government's calculation of the proper amount of the proposed forfeiture money judgment. The proposed forfeiture money judgment vastly overstates the value

8

of the property which constitutes or is derived from the proceeds of Mr. Butler's offenses. Most of the proceeds alleged by the Government represent monies that were owed to Butler based on both the governing SEA Card contractual framework and the evidence in the record.

## CONCLUSION

The Government has not shown that the amounts it seeks to forfeit were not contractually owed. Instead, it relies on a flawed assumption that collapses fixed-price contracting into cost reimbursement and treats every dollar above a supplier's invoice as fraud. That approach is inconsistent with the law, the contracts, and the record.

The Government's motion rests on an assumption, not proof: that every dollar above a supplier invoice is fraud. The law requires more. Because the Government has not established that the property it seeks was obtained "by means of" fraud, its forfeiture request should be denied or substantially limited.

Dated:  April 6, 2026

<table>
<tr><td><strong>GOLDBERGER WEISS, P.A.</strong></td><td><strong>BRUCE A. ZIMET, P.A.</strong></td></tr>
<tr><td>1555 Palm Beach Lakes Boulevard</td><td>1555 Palm Beach Lakes Boulevard</td></tr>
<tr><td>Suite 1400</td><td>Suite 1400</td></tr>
<tr><td>West Palm Beach, Florida 33401</td><td>West Palm Beach, Florida 33401</td></tr>
<tr><td>Tel: (561) 659-8300</td><td>Tel: (561) 508-7741</td></tr>
<tr><td>Fax: (561) 284-8938</td><td>Fax: (954) 760-4421</td></tr>
<tr><td>Email: jason@goldbergerweiss.com</td><td>Email: baz@bruceazimetlaw.com</td></tr>
<tr><td></td><td></td></tr>
<tr><td>/s/JASON S. WEISS, ESQ.</td><td>/s/ BRUCE A. ZIMET, ESQ.</td></tr>
<tr><td>Florida Bar No. 0096040</td><td>Florida Bar No. 0225053</td></tr>
<tr><td>Attorney for the Defendant</td><td>Attorney for the Defendant</td></tr>
</table>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 6, 2026, undersigned electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system. Undersigned certifies that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**GOLDBERGER WEISS, P.A.**
1555 Palm Beach Lakes Boulevard
Suite 1400
West Palm Beach, Florida 33401
Tel: (561) 659-8300
Fax: (561) 284-8938
Email: jason@goldbergerweiss.com

**BRUCE A. ZIMET, P.A.**
1555 Palm Beach Lakes Boulevard
Suite 1400
West Palm Beach, Florida 33401
Tel: (561) 508-7741
Fax: (954) 760-4421
Email: baz@bruceazimetlaw.com

/s/JASON S. WEISS, ESQ.
Florida Bar No. 0096040
Attorney for the Defendant

/s/ BRUCE A. ZIMET, ESQ.
Florida Bar No. 0225053
Attorney for the Defendant

10